CARLIE CHRISTENSEN, United States Attorney (#633)
SCOTT B. ROMNEY, Assistant United States Attorney (#10270)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Facsimile: (801) 524-6924



## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **INDICTMENT** |
| | ) | |
| v.  Plaintiff, | ) | - 18 U.S.C. § 1343: Wire Fraud |
| | ) | (Counts 1-10); |
| | ) | - 18 U.S.C. §1344: Bank Fraud |
| JOHN S. DUDLEY, | ) | (Counts 11-12); |
| | ) | - 18 U.S.C. § 1957: Money Laundering |
| Defendant. | ) | (Counts 13-17). |
| | ) | |

The Grand Jury charges:

Case: 2:11-cr-00437
Assigned To : Campbell, Tena
Assign. Date : 5/25/2011
Description: USA v.

**BACKGROUND**

At all times relevant to this Indictment:

1.      Defendant JOHN S. DUDLEY was a resident of Salt Lake County, Utah, and

conducted business from his home located at 8028 Madsen Ct., Sandy, Utah. Defendant

DUDLEY opened, held, and maintained the following bank accounts, among others:

• John and Julie Dudley, Account No. xxxxx2300 at Zions Bank, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)(A).

• John Dudley, Account No. xxxxx5145 at Zions Bank, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)(A).

1

- John Dudley, Account No. xxxxx5209 at Utah First Credit Union, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)(A).

- John Dudley, Account No. xx5201 at Utah First Credit Union, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)(A).

- John Dudley, Account No. xx5204 at Utah First Credit Union, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)(A).

- John Dudley, Account No. xxx0102 at UBS Bank, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)(A).

Defendant DUDLEY used the following email addresses to send (directly and through a third party) and receive email communications:

- btn000@gmail.com

- btn002@gmail.com

- johnomni2@gmail.com

## THE SCHEME AND ARTIFICE TO DEFRAUD

2.      From in or about January 2007, to in or about March 2010,

### JOHN S. DUDLEY,

defendant herein, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and omissions of material fact, in that defendant induced individuals to invest money with him for purported use in various investment programs that defendant touted, including, among others: a foreign exchange (FOREX) trading program, mining speculation, European and domestic stock options and commodity trading, and a human jetpack rocket suit, knowing full well that investor funds would be diverted and used by defendant DUDLEY for his personal benefit and for purposes other than the aforementioned investment programs.

2

3.      It was a part of this scheme and artifice to defraud that defendant DUDLEY, according to a process he referred to as "equity mining," did help, encourage and advise potential investors to obtain money from financial institutions by making false and fraudulent representations in order to obtain loans for luxury items, such as homes and vehicles, so that investors could invest part of those loan proceeds in one or more of his purported investment programs.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

The scheme and artifice to defraud was accomplished in the following manner and through the following means:

4.      It was a part of the scheme and artifice to defraud that in approximately January 2007, defendant DUDLEY began to solicit investors at investment club meetings in Salt Lake County by representing himself as an experienced and successful investor and describing his investment programs to prospective investors.

5.      It was further a part of the scheme and artifice to defraud that defendant DUDLEY made one or more of the following representations, orally or in writing, or both, to investors about the investment programs:

- Investors could expect monthly returns of 5-10% per month based on the purported success of defendant DUDLEY's recent trading history.

- Defendant Dudley had not suffered a trading loss since 1978.

- Investors' funds would be used exclusively for investment purposes.

- Defendant Dudley had personally done very well in his investments and had never made less than 5% per month over the last 30 years.

- Investors' principal was protected against losses because defendant DUDLEY incorporated stop-loss procedures so that no more than 5-50% of their trading capital was at risk.

- Investors' money was backed by a "senior life settlement policy" that reduced or eliminated investors' risk of loss.

- Defendant DUDLEY did not compensate himself or charge for investing money so that all of the earnings would go directly to the investors.

- Investing with defendant DUDLEY was an exclusive opportunity with only a limited number investors allowed to invest with him at one time.

6.    It was further a part of the scheme and artifice to defraud that defendant DUDLEY

helped, encouraged, and advised prospective investors to borrow money from banks and financial

institutions to invest with him.  Defendant DUDLEY advised and encouraged prospective

investors to engage in "equity mining," which is the process of acquiring money from a financial

institution in connection with the purchase of a luxury item, such as a home or vehicle, by

obtaining loan proceeds in excess of the luxury item's actual purchase price.  In order to help

assist prospective investors to engage in "equity mining," defendant DUDLEY advised

prospective investors to make one or more of the following false and fraudulent representations

to the financial institutions when applying for a loan:

- Investors should misrepresent their income to the financial institution in order to qualify for the loan.

- Investors should misrepresent their assets in order to qualify for the loan by claiming to be the owner of an investor-funded checking account that actually belonged to and was controlled by defendant DUDLEY.

- Investors could obtain multiple loans by applying for the loans at different financial institutions over a short period of time so that the financial institutions would not be aware of their obligations to the other lenders.

4

7.     It was further a part of the scheme and artifice to defraud that defendant DUDLEY directed investors to write him checks representing their principal investments that he then deposited into one of his bank accounts listed in paragraph 1 above.

8.     It was further a part of the scheme and artifice to defraud that defendant DUDLEY used new investors' principal to pay old investors' returns. This type of fraudulent financial arrangement is commonly known as a "Ponzi scheme." Some investors rolled their "returns" back into their investment. Virtually all of investors' principal investment funds were used by defendant DUDLEY for either paying "returns" to other investors or for defendant DUDLEY's personal benefit.

9.     It was further a part of the scheme and artifice to defraud that defendant DUDLEY knowingly diverted investor funds represented to be used in one or more of his purported investment programs to the following uses, among others:

- To purchase a home located at 8028 Madsen Ct., Sandy, Utah in the amount of $1,500,000.00

- To a purchase a home located at 1377 West 13200 South, Riverton, Utah in the amount of $860,327.63.

- To make a down payment of $28,978.31 on the purchase of Mastercraft X45 ski boat.

- To pay defendant DUDLEY's personal expenses, including meals, travel expenses including international airline tickets, and gifts for his wife and family.

- To create a "Ponzi effect" by paying out new investors' investment funds to older investors to create the false impression that defendant DUDLEY's investment programs were yielding a return on investment.

10.     It was further a part of the scheme and artifice to defraud that defendant DUDLEY, in an effort to lull investors into a false sense of security concerning their

investments, made the following series of false excuses, among others, concerning his purported

inability to transfer and return funds back to investors:

- Funds were "locked up" with a brokerage house in London, England because the European Central Bank had initiated an investigation into several brokerage houses in Europe.

- Funds were delayed in an attempt to negotiate a better exchange rate from British Pounds to American Dollars.

- Funds were secure in bank accounts in Europe and would be released shortly for disbursement to investors.

- Funds were lost due to an unexpected downturn in the economy that caused defendant DUDLEY's investments to lose money.

Throughout the lulling period, defendant DUDLEY repeatedly gave investors false

assurances that their investments were secure and that they would be receiving their principal

back shortly.

11.    From in or about January 2007, to in or about March 2010, over $12 million was

invested with defendant DUDLEY for use in his purported investment programs. As noted

above, virtually all of investors' principal investment funds were used by defendant DUDLEY

for either paying "returns" to other investors or for defendant DUDLEY's personal benefit, and

not for defendant DUDLEY's purported investment programs.

## ACTS IN FURTHERANCE OF THE SCHEME AND ARTIFICE TO DEFRAUD

In furtherance of the artifice and scheme to defraud, the following acts, among others,

were committed, or caused to be committed, in the Central Division of the District of Utah:

**Investor B.D.**

12.    Beginning in about March 2007, defendant DUDLEY solicited B.D. at an

investment club meeting in Salt Lake County, Utah. Defendant DUDLEY represented to B.D.,

among other things, that: (1) defendant DUDLEY knew of a way that he could get paid to drive nice cars and own a home; (2) defendant DUDLEY was an investor and traded stock options in European markets for several people, including many who attended the investment club; (3) B.D. could expect monthly returns of 8-10% based on the success of defendant DUDLEY's recent trading history; (4) defendant DUDLEY had not suffered an investment loss since 1978; (5) defendant DUDLEY protected against losses by never risking more than 5% of the trading capital; and (6) defendant DUDLEY would not compensate himself for investing B.D.'s money so that all of the earnings would go to B.D.

13. Based on the foregoing representations, among others, from about April 2007 to September 2008, B.D. invested approximately $611,000.00, including his own money and money he invested with defendant DUDLEY on behalf of his family and friends.

14. From about April 2007 until September 2008, B.D. received approximately $100,000 from defendant DUDLEY as purported monthly returns on his investment. B.D. received no other returns and lost the remaining principal on his investment.

15. From about November 2007 to about August 2009, defendant DUDLEY transmitted or caused to be transmitted the following e-mails containing some of the false excuses described in paragraph 10 above:

| Date of Email | Sending Email Account | Receiving Email Account. | Subject |
|---|---|---|---|
| 12/19/08 | btn000@gmail.com | lxxxxxxm@gmail.com | Fwd: Update on Progress |
| 04/17/09 | btn002@gmail.com | lxxxxxxm@gmail.com | Opinion Letter from the attorney |
| 08/05/09 | btn002@gmail.com | lxxxxxxm@gmail.com | please contact me |

**Investor E.H.**

16.     In about March 2008, E.H. learned about defendant DUDLEY and defendant

DUDLEY's investment programs from B.D.  E.H. decided to invest with defendant DUDLEY

and on or about April 10, 2008, E.H. deposited $30,000.00 into defendant DUDLEY's Zion's

Bank account, No. xxxxxxx5145.

17.     From about June 2008, until about August 2008, E.H. received approximately

$4,500.00 from defendant DUDLEY as purported monthly returns on his investment.  E.H.

received no other returns and lost the remaining principal on his investment.

18.     In about March 2009, E.H. began to send emails to defendant DUDLEY to inquire

as to why E.H. stopped receiving interest payments on his investment and to check the status of

his investment.

19.     From about April 2009 to about August 2009, defendant DUDLEY transmitted or

caused to be transmitted the following e-mails to E.H. containing some of the false excuses

described in paragraph 10 above:

| Date of Email | Sending Email Account | Receiving Email Account. | Subject |
|---|---|---|---|
| 04/17/09 | btn002@gmail.com | exxxxxxxxy@hotmail.com | Re: Fw: Information Request |
| 05/15/09 | johnomni2@gmail.com | exxxxxxxxy@hotmail.com | phone call today |
| 08/01/09 | btn002@gmail.com | exxxxxxxxy@hotmail.com | Re: Information Request |

**Investor E.C.**

20.     Beginning in about January of 2007, defendant DUDLEY solicited E.C. to invest

money with him.  Defendant DUDLEY represented to E.C., among other things, that: (1)

8

defendant DUDLEY was an experienced and successful investor and had been trading for twenty years; (2) E.C.'s investment would be protected against loss because defendant DUDLEY employed "stop-losses" that prevented E.C.'s investment from ever losing more than 50% of its value; (3) defendant DUDLEY had not lost more than 2% in a month in his recent trading history; and (4) E.C. could expect to make returns of 5-10% per month on his investment.

21.     Based on the foregoing representations, among others, from about January 2007 to about September 2008, E.C. invested approximately $90,000.00 with defendant DUDLEY.

22.     From about January 2007 until September 2008, E.C. received approximately $12,000.00 from defendant DUDLEY as purported monthly returns on his investment. E.C. received no other returns and lost the remaining principal on his investment.

23.     From about November 2007 to about August 2009, defendant DUDLEY transmitted or caused to be transmitted the following e-mails containing some of the false excuses described in paragraph 10 above:

| Date of Email | Sending Email Account | Receiving Email Account. | Subject |
|---|---|---|---|
| 11/21/08 | exxxxxxxx1@netzero.com | btn000@gmail.com | A question and favor. |
| 08/05/09 | btn002@gmail.com | exxxxxxxx1@gmail.com | please contact me |

**Investor J.K.**

24.     Beginning in about August 2007, defendant DUDLEY solicited J.K. to invest money with him. Defendant DUDLEY represented to J.K., among other things, that: (1) defendant DUDLEY was an experienced investor who had traded stocks for many years in

England; (2) that J.K.'s investment was low risk; and (3) defendant DUDLEY's method of investing prevented losses of more than 3-5% on any given trade.

25.     Based on the foregoing representations, among others, from about August 2007 to November 2008, J.K. invested approximately $80,000.00 with defendant DUDLEY.

26.     From about August 2007 until about September 2008, B.D. received payments from defendant DUDLEY as purported monthly returns on his investment. B.D. received no other returns and lost the remaining principal on his investment.

27.     On or about August 5, 2009, defendant DUDLEY transmitted or caused to be transmitted the following e-mail containing some of the false excuses described in paragraph 10 above:

| Date of Email | Sending Email Account | Receiving Email Account. | Subject |
|---|---|---|---|
| 08/05/09 | btn002@gmail.com | jxxxxxh@gmail.com | please contact me |

**Investor K.W.**

28.     In about September 2007, K.W. met defendant DUDLEY at an investment club meeting in Salt Lake County, Utah.  Defendant DUDLEY solicited K.W. to invest money with him by representing to K.W., among other things, that: (1) defendant DUDLEY was an experienced investor; and (2) K.W. could expect to receive a 7-12% per month return on his investment.

29.     On or about October 31, 2007, K.W. invested $5,000.00 with defendant DUDLEY.

30.     So that K.W. could acquire more money with which to invest, on or about December 6, 2007, defendant DUDLEY assisted K.W. in obtaining a home mortgage loan in the

amount of $1,500,000.00 from Bank of Kansas City.  Defendant DUDLEY did this by placing

K.W. on defendant DUDLEY's Zions Bank checking account, # xxxxx2300, which at that time

had a balance of $1,183,833.55, for the purpose of completing a Verification of Deposit and

falsely representing to Bank of Kansas City that K.W. owned the checking account and had

sufficient assets to repay the loan.

**Investor U.A.**

31.     On or about January 21, 2010, Undercover Agent (U.A.), an Investigator with the

with the Division of Securities, Utah Department of Commerce, acting in an undercover capacity,

attended an investment club meeting at the Prosperity Learning Center in Salt Lake County, Utah

as a prospective investor.  At the investment club meeting, defendant DUDLEY spoke to U.A.

and other prospective investors in attendance and represented to them, among other things, that:

(1) defendant DUDLEY was a successful investor who would soon be receiving approximately

$15 billion from a successful European investment deal with which he was involved; (2)

investors could purchase luxury items that would "pay for themselves," such homes or boats, by

obtaining financing from banks and financial institutions for more than the sale price of the

luxury item and then investing the remainder of the loan proceeds in an investment offering a

guaranteed 10% return per month; and (3) defendant DUDLEY's investment successes had

afforded him the ability to purchase a new Mercedes Benz SL car and a $125,000.00 MasterCraft

ski boat.

32.     From on or about January 27, 2010 to on or about March 30, 2010, defendant

DUDLEY had several telephone conversations in which defendant DUDLEY continued to

discuss and solicit U.A.'s investment.  In these phone conversations, defendant DUDLEY

represented to U.A., among other things, that: (1) defendant DUDLEY could offer U.A. a fixed

rate return of 10% per month if U.A. invested $1 million with defendant DUDLEY; (2) defendant DUDLEY operated an investment fund that used computer software that was able to trade investors' money automatically, twenty-four hours a day; (3) defendant DUDLEY had eight individuals in Salt Lake City and in the United Kingdom who monitored the computer program's trading; (4) the computer program had been very successful and was up 26% for the month of January, 2010; (5) defendant DUDLEY was a specialist in trading options and derivatives; (6) defendant DUDLEY was up 91% over the previous ten days in his personal trading account; (7), defendant DUDLEY's investment fund was backed by senior life settlement policies that would protect U.A.'s investment against loss; and (8) defendant DUDLEY would soon be receiving $15 billion from a large deal in which he was involved and would be sharing a percentage of the money with the investment club that U.A. had previously attended.

33.     From about March 22, 2010, to about March 29, 2009, defendant DUDLEY transmitted or caused to be transmitted the following e-mails to U.A. containing some of the false representations described in paragraphs 32-33 above:

| Date of Email | Sending Email Account | Receiving Email Account. | Subject |
|---|---|---|---|
| 03/22/10 | johnomni2@gmail.com | bneil832@hotmail.com | Re: Castle Creek Bank Details |
| 03/24/10 | johnomni2@gmail.com | bneil832@hotmail.com | Re: Castle Creek Bank Details |
| 03/29/10 | johnomni2@gmail.com | bneil832@hotmail.com | Re: Castle Creek Bank Details |

**Counts 1 through 12 10 4t**
**18 U.S.C. § 1343**
**(Wire Fraud)**

34.     The Grand Jury incorporates and realleges the allegations contained in paragraphs

1 through 33 above.

35.     On or about each of the dates identified below, in the Central Division of the

District of Utah,

**JOHN S. DUDLEY,**

defendant herein, knowingly and for the purpose of executing a scheme and artifice to defraud

and to obtain money by means of false and fraudulent pretenses, representations, and omissions

of material fact, and attempting to do so, transmitted and caused to be transmitted by means of

wire communication in interstate commerce, writings, signs, signals, pictures and sounds,

including but not limited to the following interstate wire transfers of money and email

communications to and from defendant DUDLEY, as described in counts 1-10 below, all in

furtherance and in execution of defendant DUDLEY's fraudulent investment program:

| Count | Date | Investor | Interstate Wire Transmission |
|---|---|---|---|
| 1 | 11/21/08 | E.C. | Email with subject line: "A question and a favor"; sent by E.C. to defendant through a gmail server located in California. |
| 2 | 12/19/08 | B.D. | Email with subject line: "Fwd: Update on Progress"; sent by defendant to B.D. through a gmail server located in California. |
| 3 | 04/17/09 | B.D. | Email with subject line: "Opinion Letter from attorney"; sent by defendant to B.D. through a gmail server located in California. |
| 4 | 04/17/09 | E.H. | Email with subject line: "Re: Fw: Information Request"; sent by defendant to E.H. through a gmail server located in California. |

13

| 5 | 08/05/09 | B.D., E.C., J.K | Email with subject line: "please contact me"; sent by defendant to B.D., E.C., and J.K. through a gmail server located in California. |
| 6 | 05/15/09 | E.H. | Email with subject line: "phone call today"; sent by defendant to E.H. through a gmail server located in California. |
| 7 | 08/01/09 | E.H. | Email with subject line: "Re: Information Request"sent by defendant to E.H. through a gmail server located in California. |
| 8 | 03/22/10 | U.A. | Email with subject line: "Re: Castle Creek Bank Details"; sent by defendant to U.A. through a gmail server located in California. |
| 9 | 03/24/10 | U.A. | Email with subject line: "Re: Castle Creek Bank Details"; sent by defendant to U.A. through a gmail server located in California. |
| 10 | 03/29/10 | U.A. | Email with subject line: "Re: Castle Creek Bank Details"; sent by defendant to U.A. through a gmail server located in California. |

All in violation of 18 U.S.C. §§ 1343 and 2(b).

## Counts 11 through 12
## 18 U.S.C. §§ 1344, 2
## (Bank Fraud)

36.     The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 35 above.

37.     On or about each of the dates identified below, in the Central Division of the District of Utah,

## JOHN S. DUDLEY,

defendant herein, did execute and attempt to execute a scheme and artifice to defraud Bank of Kansas City and Utah First Credit Union, financial institutions as defined by 18 U.S.C. § 20, and to obtain money by means of false and fraudulent pretenses, representations, and promises, in

that defendant DUDLEY did falsely and fraudulently represent information on mortgage loan

applications concerning the borrower's income and assets, and did aid and abet others therein, as

set forth in the chart below:

| Count | Date | Name of Document | False Representation(s) |
|-------|------|------------------|------------------------|
| 11 | 11/01/07 | Utah Federal CU Uniform Residential Loan Application | * DUDLEY represented his income as $50,000 per month. <br> * DUDLEY listed Utah First Credit Union checking account , #xx3252, with a balance of $1,500.000.00, as an asset when funds belonged to investors. |
| 12 | 12/27/07 | Bank of Kansas City Request for Verification of Deposit | * DUDLEY placed K.W. on his Zions Bank checking account, account #xxxxx2300, with a balance of $1,183,833.55, so that K.W. could list the account as an asset, when funds belonged to investors. |

All in violation of 18 U.S.C. §§ 1343 and 2(b).

## Counts 13 through 17
## 18 U.S.C. § 1957
## (Money Laundering)

38.     The Grand Jury incorporates and realleges the allegations contained in paragraphs

1 through 37 above.

39.     On or about the dates listed below, in the Central Division of the District of Utah,

## JOHN S. DUDLEY,

defendant herein, did knowingly engage and attempt to engage in the following monetary

transactions by, through, or to a financial institution, affecting interstate commerce, in criminally

derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of

U.S. currency, such property having been derived from a specified unlawful activity (to wit: Wire

Fraud in violation of 18 U.S.C. § 1343):

| Count | Date of Monetary Transaction | Amount (approx.) | Monetary Transaction |
|-------|------------------------------|------------------|----------------------|
| 13 | 10/08/07 | $ 27,000.00 | Transfer of funds via cashiers check drawn on defendant's Zion's Bank account xxxxx2300 to Equity Title Insurance for down payment of home purchase located at 8028 Madsen Ct., Sandy, Utah. |
| 14 | 10/31/07 | $ 1,274,940.32 | Wire transfer of funds from defendant's Zion's Bank account xxxxx2300 to Equity Title Insurance for remainder of home purchase located at 8028 Madsen Ct., Sandy, Utah. |
| 15 | 12/10/07 | $ 860,327.63 | Wire transfer of funds from defendant's Utah First Credit Union account xxxx5209 to US Title Insurance Agency for home purchase located at 1377 West 13200 South, Riverton, Utah 84065. |
| 16 | 05/23/08 | $ 1,000,000.00 | Transfer of funds via cashiers check drawn on defendant's Zion's Bank account xxxxx2300 to defendant's UBS Bank account xxxx0102. |
| 17 | 06/19/08 | $ 28,978.31 | Transfer of funds via check, check no. 1060, from defendant's Utah First Bank account xxxx5209 to Utah WaterSports for down payment on purchase of Mastercraft X45 ski boat |

All in violation of 18 U.S.C. §§ 1957 and 2(b).

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

As a result of committing the felony offense alleged in Counts 1 through 19 of this Indictment, each of which is punishable by imprisonment for more than one year, defendant JOHN S. DUDLEY shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any and all property constituting or derived from any proceeds defendant DUDLEY obtained, directly or indirectly, as a result of violating 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § 1344 (Bank Fraud), and any property traceable thereto, including:

- MONEY JUDGMENT in the amount of at least $1,500,000 representing the approximate value of the proceeds obtained by defendant DUDLEY in connection with the above-referenced offenses.

A TRUE BILL:

/s/
_____
FOREPERSON of the GRAND JURY


CARLIE CHRISTENSEN
United States Attorney


_____
SCOTT B. ROMNEY
Assistant United States Attorney